[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Brown v. Sackett*, Slip Opinion No. 2025-Ohio-2080.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2080

THE STATE EX REL. BROWN *v*. SACKETT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Brown v. Sackett*, Slip Opinion No. 2025-Ohio-2080.]

*Mandamus—Public-records requests—Inmate's request that warden's secretary be compelled to give him access to media report regarding an alleged assault against him and to any video footage of it denied because inmate presents no evidence refuting secretary's assertion that no such report or footage exists—Inmate's request that warden's secretary be compelled to provide him with a copy of contract he requested granted contingent on inmate's payment of costs of copying and postage—Inmate awarded $1,000 in statutory damages for secretary's failure to comply with her duty to make contract available at cost and within a reasonable period of time.*

(No. 2024-0730—Submitted March 11, 2025—Decided June 17, 2025.)

IN MANDAMUS.

————————————

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., concurred in part and dissented in part and would not award statutory damages.

**Per Curiam.**

{¶ 1} Relator, Edward Brown, filed an original action seeking a writ of mandamus against respondent, Laura Sackett, an employee at the Lake Erie Correctional Institution, for allegedly failing to respond to public-records requests he sent her. He also requests statutory damages and court costs. We grant the writ in part and deny it in part and order Sackett to provide Brown with a copy of the contract Brown requested once he has paid $158.05 for copying costs and postage. We also award Brown $1,000 in statutory damages but deny his request for court costs.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} Brown is confined at the Lake Erie Correctional Institution. The Lake Erie Correctional Institution is owned and operated by CoreCivic, Inc., under a contract with the Ohio Department of Rehabilitation and Correction ("ODRC"). Sackett is an employee of CoreCivic and is the warden's secretary for the institution. Her duties include responding to public-records requests.

{¶ 3} Brown alleges that he was assaulted in March 2022. On February 16, 2024, he sent an electronic kite to Sackett.[1] He wrote in the kite, "I request to inspect, and a paper copy of, the Daily Media Report (DRC 1786) which was created on account of a vicious assault against me, happening sometime in March 2022; and, also, a copy (on compact disk) of any video surveillance camera footage that was utilized in the investigation of and/or depicts the vicious incident." Six days later, Sackett responded, "You need to be specific about the time and date this

_____

1. "A kite is a type of written correspondence between an inmate and prison staff." *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

incident occurred. Security video is public record with some exceptions." Brown did not reply to Sackett's response. And in an affidavit she submitted into evidence, Sackett avers that she reviewed all incident reports for March 2022, that she found none referring to an assault on Brown, and that no records responsive to the request exist.

{¶ 4} In the meantime, on February 20, Brown sent another electronic kite to Sackett. In this kite, he wrote, "I request to view, and for a paper copy of, the contract, pursuant to R.C. 9.06, between ODRC and CoreCivic, Inc. . . . in regards [to] the management and operation of Lake Erie Correctional Institution." Six days later, Sackett responded, "I will forward your request to CoreCivic legal services." Sometime later, CoreCivic sent Brown a response stating that it would need approximately five staff hours to redact the contract before the contract could be copied and produced. It notified Brown that the total cost to obtain a copy of the contract would be $206.05, which included a $48 charge for the staff hours required to redact the contract. Brown did not provide payment, and CoreCivic neither sent him a copy of the contract nor allowed him to view it.

{¶ 5} On May 21, 2024, Brown filed this mandamus action. He requests a writ ordering production of the records he requested and awards of statutory damages and court costs. Sackett filed a motion to dismiss, which we initially granted. 2024-Ohio-2937. On Brown's motion, however, we granted reconsideration of the dismissal. 2024-Ohio-5368. We also issued an alternative writ, setting a schedule for the submission of evidence and briefs. *Id.* Sackett submitted evidence, but Brown did not.

## II. LEGAL ANALYSIS

### A. *The discovery motions*

{¶ 6} Before turning to the merits of this action, we address two motions Brown has filed relating to a discovery dispute between the parties.

**{¶ 7}** Prior to our order granting Sackett's motion to dismiss, Brown sent her requests for admission under Civ.R. 36. Sackett responded in July 2024, generally objecting to the requests as premature and unauthorized under Supreme Court Rules of Practice 12.04 and 12.05. On November 27, two weeks after we issued the alternative writ, Sackett provided supplemental responses to the discovery requests. On December 4, Brown filed a motion "for order determining the sufficiency of discovery answers" in which he asks us to find that Sackett's objections to his requests were improper and deem the requests admitted. Sackett opposes the motion.

**{¶ 8}** Even assuming that Brown's requests for admission were appropriate, *see* Supreme Court Rule of Practice 12.06(A), we deny Brown's motion for an "order determining the sufficiency of discovery answers." Because Sackett initially objected to the requests for admission, at most, we could find that the objections were improper and order her to provide answers to the requests. *See* Civ.R. 36(A)(3) ("Unless the court determines that an objection is justified, it shall order that an answer be served."). Before Brown filed his motion, however, Sackett provided supplemental responses to the requests for admission. Brown nowhere discusses these new responses or their impact on his motion. Because Brown does not address Sackett's actual responses to his requests for admission, we deny the motion.

**{¶ 9}** In addition, on November 25, Brown filed an "emergency motion to amend the alternative writ schedule." In this motion, Brown argues that because Sackett has not properly responded to his discovery requests, he cannot properly present his evidence or prepare his merit brief. He asks us to amend our schedule for the filing of evidence and briefs to allow us to resolve the discovery dispute. Sackett opposes the motion.

**{¶ 10}** We deny Brown's motion to amend the case schedule. The schedule in this case is the standard schedule we set when issuing an alternative writ—a

schedule that parties routinely follow. Moreover, Brown provides no specific argument why he needs further answers to his requests for admission to present his case. Notably, he did not file any evidence in this case and does not explain why the discovery dispute prevented him from doing so.

### B. Sackett's exhaustion-of-administrative-remedies argument

{¶ 11} Sackett argues that Brown's complaint should be dismissed because he failed to exhaust administrative remedies before filing it. More specifically, Sackett contends that Brown was required to exhaust the inmate-grievance procedure required by Adm.Code 5120-9-31 before bringing this action. We reject this argument.

{¶ 12} Under R.C. 2969.26(A), when an inmate files a civil action subject to the prison's grievance system against a government entity or employee, the inmate must file with the complaint an affidavit stating that the inmate filed a grievance in the prison's grievance system and must attach a copy of the prison's decision. This provision, however, does not apply to original actions filed in this court. R.C. 2969.21(B)(2).

{¶ 13} Sackett acknowledges that Brown was not required to file an R.C. 2969.26(A) affidavit when filing this mandamus action. But she argues that under the doctrine of exhaustion of administrative remedies, Brown was still required to exhaust any available administrative remedies—including the inmate-grievance procedure—before bringing his public-records case. The doctrine of exhaustion of administrative remedies generally requires a party to exhaust the available avenues of administrative relief through administrative appeal before pursuing court action in an administrative matter. *E.g.*, *Nemazee v. Mt. Sinai Med. Ctr.*, 56 Ohio St.3d 109, 111 (1990). Prior to the enactment of the affidavit requirement in R.C. 2969.26, we held that "the inmate grievance procedure provided in Ohio Adm.Code 5120-9-31 constitutes an adequate legal remedy which must be exhausted prior to instituting a mandamus action regarding complaints and problems of inmates

5

relating to the conditions of their incarceration." *State ex rel. Humphrey v. Jago*, 1996-Ohio-94, ¶ 4.

{¶ 14} But Sackett points to no case in which we have held that the doctrine of exhaustion of administrative remedies applies to R.C. 149.43 mandamus actions seeking the production of public records. Indeed, we have held that a relator in a public-records action "need not demonstrate the absence of an adequate remedy in the ordinary course of the law." *State ex rel. Cincinnati Enquirer v. Pike Cty. Gen. Health Dist.*, 2018-Ohio-3721, ¶ 12. And for decades, we have issued writs of mandamus under R.C. 149.43 ordering the production of public records without requiring that the requester have participated in a public office's internal dispute-resolution process before bringing a mandamus action. *See, e.g.*, *State ex rel. Multimedia, Inc. v. Whalen*, 48 Ohio St.3d 41, 42 (1990) (public-records requester had no duty to appeal public employee's denial of records request to the employee's superior before bringing mandamus action). Generally, "when there is a judicial remedy that is intended to be separate from the administrative remedy, the requirement of exhaustion of administrative remedies does not apply." *Dworning v. Euclid*, 2008-Ohio-3318, ¶ 10. Here, the Public Records Act, by specifically authorizing mandamus actions, has created a judicial remedy—separate from any administrative remedy—for the failure of a public office or official to properly respond to a public-records request. Therefore, we reject Sackett's exhaustion-of-administrative-remedies argument.

*C. Brown's requests for a writ of mandamus and statutory damages*

{¶ 15} "Upon request by any person . . . all public records responsive to the request shall be promptly prepared and made available for inspection to the requester at all reasonable times during regular business hours." R.C. 149.43(B)(1). In addition, "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). A

6

writ of mandamus is an appropriate remedy to compel compliance with the Public Records Act. *See* R.C. 149.43(C)(1)(b). To obtain the writ, "the requester must prove by clear and convincing evidence a clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it." *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10.

{¶ 16} Statutory damages shall be awarded if a requester has transmitted a written request by hand delivery, electronic submission, or certified mail and the public office or person responsible for the records failed to comply with an obligation under R.C. 149.43(B). R.C. 149.43(C)(2).[2] Brown submitted the public-records requests at issue here through the prison's electronic kite system, which constitutes electronic submission for purposes of R.C. 149.43(C)(2). *See Sehlmeyer* at ¶ 21.

### 1. The February 16 request

{¶ 17} On February 16, 2024, Brown requested to inspect, and to be provided with a copy of, a March 2022 media report regarding an assault he says occurred against him; he also requested a copy of any video footage of the incident. In response, Sackett told Brown that he needed to provide a specific date and time that the incident occurred. Brown never replied to Sackett's response, and Sackett avers that no records responsive to the request exist.

{¶ 18} "When a public office attests that it does not have responsive records, the relator in a public-records mandamus case bears the burden of proving by clear and convincing evidence that the requested records exist and are maintained by the public office." *State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-Ohio-4715, ¶ 13. Because Sackett has averred that there are no records

---

2. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

responsive to Brown's request and Brown presents no evidence showing otherwise, we deny the writ of mandamus as to the February 16 request.

{¶ 19} We also deny statutory damages in connection with the February 16 public-records request. Generally, if a person responsible for public records denies a request as ambiguous or overly broad, the person must provide the requester with an opportunity to revise the request by informing the requester how the office maintains records. R.C. 149.43(B)(2). Here, Sackett told Brown that he needed to provide a more specific date and time of the alleged assault. In his brief, Brown states that he "provided as much information as he could." But even if he did not know the exact date of the alleged assault, he did not attempt to work with Sackett to narrow his request to a particular period in March 2022 or even tell her that he did not know the exact date. *See State ex rel. Morgan v. Strickland*, 2009-Ohio-1901, ¶ 18 (R.C. 149.43(B)(2) "contemplates that the requester and the public-records custodian cooperate in fulfilling a request"). Instead, he sued. Sackett complied with her duties under R.C. 149.43(B) by telling Brown that he had to provide more specific information about the date and time of the assault, and we therefore deny his request for statutory damages in connection with the February 16 public-records request.

### 2. The February 20 request

{¶ 20} On February 20, 2024, Brown sent Sackett an electronic kite in which he requested a copy of, and to view, the operating contract between CoreCivic and ODRC. In its response, CoreCivic notified Brown that the total cost for obtaining a copy of the contract would be $206.05: $48.00 for staff hours to redact the contract, $124.05 for copying costs, and $34.00 for postage. It directed Brown to provide payment to receive a copy of the contract.

{¶ 21} As Brown notes, CoreCivic is not permitted to charge Brown for the cost of the time required for its staff to redact the contract. A "public office . . . shall make copies of the requested public record available to the requester *at cost*."

(Emphasis added.) R.C. 149.43(B)(1). "At cost" means "*actual* cost and does not include labor costs for employee time to respond to the request and make the copies." (Emphasis in original.) *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 2012-Ohio-753, ¶ 43. Therefore, CoreCivic may charge Brown the actual copying costs as well as postage, *see* R.C. 149.43(B)(7), but may not charge him its labor costs. Brown does not dispute CoreCivic's calculated copying costs of $124.05 or postage of $34.00—which add up to $158.05.

{¶ 22} Although Sackett now argues that Brown is not entitled to a copy of the contract because the contract is publicly available online, Brown requested a paper copy of the contract and the Public Records Act provides that "the person responsible for [a] public record shall permit the requester to choose to have the public record duplicated upon paper." R.C. 149.43(B)(6); *see also State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2023-Ohio-4183, ¶ 12 (inmate's access to record through prison's electronic "JPay" account did not relieve public office of its duty to produce the record in paper form). And in any event, neither Sackett nor CoreCivic notified Brown that the contract was available online when they responded to his request.

{¶ 23} We thus issue a writ of mandamus ordering respondent to provide Brown a copy of CoreCivic's contract with ODRC upon receipt of Brown's payment of $158.05. *See Clark* at ¶ 13 (issuing writ of mandamus ordering public office to produce requested records upon receipt of the relator's payment of printing fee).

{¶ 24} We also grant Brown's request for statutory damages in connection with the February 20 public-records request. "[A] public office or person responsible for public records shall make copies of [a] requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). Brown requested the contract in February 2024, and Sackett has still

not made the contract available to him at cost. Rather, Sackett's employer has attempted to add unauthorized redaction charges to the cost. We conclude that Sackett failed to comply with her duty to make the records available at cost and within a reasonable time. Because more than ten days have passed since this action was filed, we award Brown the maximum $1,000 amount in statutory damages. *See* R.C. 149.43(C)(2).

### *D. Court costs*

**{¶ 25}** Finally, Brown requests an award of court costs. Even if an award of court costs were otherwise appropriate, Brown filed an affidavit of indigency, so he has not incurred court costs. We therefore deny Brown's request for court costs. *See State ex rel. Mobley v. Bates*, 2024-Ohio-2827, ¶ 16.

### III. CONCLUSION

**{¶ 26}** We deny Brown's request for a writ ordering production of the records he requested in his February 16, 2024 kite and deny statutory damages in connection with that public-records request. But we grant Brown's request for a writ ordering Sackett, upon receipt of Brown's payment of $158.05, to provide him with a printed copy of the contract he requested on February 20, 2024. We also award him $1,000 in statutory damages for Sackett's failure to comply with her duty to make the contract available at cost and within a reasonable time. Finally, we deny Brown's request for court costs, deny his motion for an order determining the sufficiency of discovery answers, and deny his motion to amend the alternative-writ schedule.

Writ granted in part
and denied in part.

_____

Edward Brown, pro se.

Struck Love Bojanowski & Acedo, P.L.C., and Timothy J. Bojanowksi, for respondent.

January Term, 2025

---